Dugan v. Campbell.

---

*Dugan *v.* Campbell. [115

*Writ of Error to the Common Pleas of Muskingum County.*

Action can be sustained upon a note in writing, whether negotiable or not,
without setting out the consideration or original contract.
The term currency means current money, where this interpretation is not
controlled by the positive terms of the contract.

This was an action of assumpsit upon a promissory note in the
following words: " Four months after date I promise to pay John
S. Dugan or order seventy-five dollars for value received, payable

in the currency of this place, if the said Dugan does not take it out in store goods at the same rate. Zanesville, August 17, 1820."

The declaration alleges that the defendant made his certain note in writing, commonly called a promissory note, and delivered the same to the plaintiff, by which he promised to pay, reciting the note substantially; it then proceeds as follows: "And the plaintiff avers and says that the defendant did not, four months after the date of said promissory note, pay to him or order seventy-five dollars in money current in Zanesville, nor did he the plaintiff take out that sum in store goods at the same rate, by reason whereof the defendant became liable to pay to the plaintiff the said sum of seventy-five dollars in lawful money, and being so made liable to the defendant, then and there afterward, to wit: upon the 1st day of January, 1821, at the county aforesaid, undertook and faithfully promised to pay the plaintiff the said sum of seventy-five dollars, when thereto afterward he should be requested." General issue pleaded, and verdict for the plaintiff. The court of common pleas arrested the judgment; to reverse which the writ of error was brought; general error assigned.

S. W. CULBERTSON, for plaintiff in error:

It is contended that the note declared upon, in this case, is not a promissory note within the meaning either of the English statute of Anne, or of the statute of Ohio; and not being a promissory note, though it contain the words "*for value received,*" the contract ought to have been specially declared on and the consideration set out.

The definition of a promissory note, as it is understood at this day in Ohio, may be given in the words of Blackstone, 2 Com. 467: "Promissory notes, or notes of hand, are a plain and direct engagement to pay a sum specified, at a time therein limited, to a person therein named, or sometimes to his order, or often to the bearer at large." According to Butler, N. P. 272, it must be made payable *on a certainty and not on a contingency. A note made payable to an infant *when* he comes of age, is a good note within the statute of 3 and 4 Anne, chap. 9, sec. 1; Burr. 226; and it is a good note if made payable on the death of A. 2 Str. 1217.

I understand a promissory note to be a written undertaking to pay a sum certain in money, or a certain representative of money, subject to no condition by which the liability to pay may be removed. If it is for the payment of money upon an event that

Dugan *v.* Campbell.

must happen, it is good, for the event renders the time of payment certain.

This is a note for the payment of a sum of money certain, and at a certain time. It is subject to no condition by the performance of which the defendant, without the assent of the holder, can defeat the right to demand money. It was to be paid if not taken out in store goods. The defendant could not tender store goods in discharge of the note; the plaintiff might take them if he chose, and he might have done the same thing if they had not been mentioned in the note. If the plaintiff called for store goods and the defendant did not give them, no new cause of action arose; no right of either party would be affected.

It is argued that the note is not made for a sum of money certain, because, although it calls for seventy-five dollars, it is payable, not in money, but *in the currency of Zanesville,* which was of less value than money. This argument asks the court to infer a fact not expressed in the note, that the " *currency of Zanesville* " means something other than money, than the legal currency of the country. The absurdity of this argument must be manifest from this fact. That notes drawn as this one is must receive different interpretations, according to the place where they may be drawn. If drawn at Chillicothe and payable in the currency of the place, nothing being considered current there but money, it would be a good promissory note. But if drawn at any place where depreciated bank notes had a current circulation, at a reduced price, it would not be good as a promissory note. To ascertain whether the note be good or not, the court are required to travel out of the writing and inquire what was the state of the currency at the place where it was drawn? This the court ought not to do, the note must be good or bad upon its own terms. The court should give one general legal interpretation to the words used. " *The currency of this place,*" no matter where the note was executed, must mean the legal metallic currency of the country. The court can recognize no other unless the writing has specifically described it. If the engagement was *expressed that the [117 payment should be in bank notes of any particular bank, then the questions might arise, what was the value of the paper of that bank, and could the engagement be considered one for the payment of a sum of money certain? As it is, no such questions can fairly arise.

But if it were conceded that the terms "currency of this place" means bank notes, it would not vary the case. In Keith *v.* Jones, 9 Johns. 121, the note was for a sum certain, payable in York bills. The defendant demurred to the declaration, and the court overruled the demurrer. They said that the note was negotiable; "payable in York state bills is the same thing as being made payable in lawful current money of the state, for the bills mentioned mean bank paper, which is here, in conformity with common usage and common understanding, regarded as cash."

GODDARD and ADAMS, contra:

It is a principle of law too well settled to require any authorities from the books to support it, that there are only two classes of instruments which upon the face of them import a consideration. These are, specialties, and that class of simple contracts composed of promissory notes, and bills of exchange.

Before the statute of 3 and 4 Anne, c. 9, which placed promissory notes on the same footing with bills of exchange, Lord Holt uniformly held that promissory notes were nothing more than special agreements, possessing none of the properties of mercantile instruments, and that therefore the actual consideration on which they were founded must be set forth in pleading, and proved on the trial, and that a contrary determination would be setting up a "new kind of specialty hitherto unknown to the law. 2 Ld. Ray. 758. All contracts, therefore, which do not come within the statute, unless they are under seal, must be regarded as special parol contracts, and stand in the same situation which promissory notes did before the statute was made.

The contract set forth in the first count in this declaration is one of this character; being payable in the "currency of Zanesville," and not in money, without which it can not be declared on as a promissory note. 2 Bibb, 572, 585; 3 Bibb, 26, 76, 85, 115; Lansing *v.* McKillup, 3 Caines, 286.

Besides, the contract set forth in pleading in this case is liable to another objection; the payment depends upon a contingency which destroys its property as a promissory note, even if it was 118] payable in *money; for commercial transactions would be greatly embarrassed, if notes of this kind, incumbered with conditions, were permitted to circulate. It has been determined that a note promising to "pay a certain sum, or to render the body of

Dugan *v.* Campbell.

I. S. to prison by such a day," is not a note on which an action will lie after failure to render the body; because it was not originally for the payment of money, but became so by matter *ex post facto*, 2 Ld. Ray. 1362, 1396; and where the note was to pay if another did not within a certain time, the same doctrine was held. 8 Mod. 363. The note in this case is payable, "provided the plaintiff does not within a limited time take the amount out in store goods," and can not be distinguished from the two last cases cited:

A third objection to the declaration is, that there is no averment that the note was not paid " in the currency of Zanesville," but the averment is that it was not paid in " *money* current in Zanesville," so that the breach is insufficient, for it should be assigned in the *words* of the contract. Com. Dig. Pleader, c. 45, 49; 2 V. 2. In common language, when we speak of the currency of a particular place, we mean bank notes, a currency different from that of other places, and different from specie, for if the words " currency of Zanesville," are synonymous with money, where was the necessity of specifying a particular currency. The value of bank notes depends upon the facility of payment, which can be obtained more readily from banks in the neighborhood than from those at a distance, and bank notes are often below par from other causes, which creates a difference in their value; and it would be destroying language and the law to conclude that the word " currency is synonymous with the word " money," but this point has been directly decided by Chief Justice Parsons, in Jones *v.* Tales, 4 Mass. 252. He held that the words " foreign bills," in a note did not mean money, and that they must be construed to mean bank notes, and consequently different in value from money.

By the COURT:

It is not necessary to decide whether the note in this case is or is not negotiable, or to adopt or reject the principles of the cases cited on either side; for if it were not negotiable within the rules of decision, we should nevertheless consider it a promissory note, importing in itself a consideration.

From the first settlement of the state, it has been a universal practice among all classes of citizens, in making contracts, for the party who has received a consideration, according to the terms of *agreement, to execute a written promise to pay a sum of [119 money or other property for value received. Although the writ-

ing thus executed may want words of negotiability, or may contain conditions that destroy its negotiable character, the promisee rests in security upon his written contract, as evidence of his claim, and preserves no other proof of the transaction upon which it was founded. By common consent, actions have always been brought and sustained upon such instruments without setting forth or proving the consideration. Were the court now to establish a different doctrine, great mischief might ensue : numerous judgments would virtually be declared erroneous—existing contracts might be seriously affected, and a rule would be established contrary to the common understanding and usage of the country. A door would be open for controversy, whether the note were any evidence of debt, or whether the whole original contract must be made out in proof by the plaintiff? This is required neither by justice nor by common sense. A principle once established and continued by common consent, and with general approbation, ought to be received as the law of the land. It should not, but for very weighty reasons, indeed, be departed from or overruled. In this case, we are of opinion that no such reasons exist.

The objection to the manner in which the breach is assigned, is not well founded. The term "currency" in a contract, must be taken to mean *current money,* unless there be something in the contract itself to require a different interpretation. The case in 9 Johnson is considered clear on this point.

Judgment reversed.